

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. |
| FOLUKE ADEOYE (01)<br>AYITEY AYAYEE-AMIM (02)<br>MICHAEL UMUNNAKWE (03)<br>ELIZABETH UWAGBOI-UGBECHE (04)<br>OLUSOLA ADEREMI AKINGBADE (05) | 3-15CR-0164B |

## INDICTMENT

The Grand Jury charges:

At all times material to this Indictment:

### General Allegations

### The Medicare Program Generally

1. The Medicare Program (Medicare) was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Individuals receiving benefits through Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1035.

3. Medicare paid for certain home health care services, which were medically necessary and covered by the Medicare program.

4. According to 42 CFR § 409.42, for home health care services to be covered and therefore compensable by Medicare, all of the following requirements had to be met:

(a) The beneficiary must have been confined to the home or an institution that is not a hospital or nursing facility (i.e., homebound);

(b) The beneficiary must have been under the care of a physician who establishes the plan of care;

(c) The beneficiary must have been in need of skilled services such as intermittent skilled nursing services, physical therapy, speech-language pathology services, or continuing occupational therapy services;

(d) The beneficiary must have been under a plan of care that meets the requirements specified in 42 CFR § 409.43; and

(e) The home health care services must have been provided by, or under arrangements made by a participating home health care agency.

5. In order for a patient to be eligible to receive covered home health care services by Medicare, the law required that a physician certify in all cases that the patient was confined to their home. The condition of the patients should have been such that there existed a normal inability to leave home and, consequently, leaving home would have required a considerable and taxing effort. If a patient did in fact leave the home, the patient may nevertheless have been considered homebound if the absences from the home were infrequent or for periods of relatively short duration, or were attributable to the need to receive health care treatment.

6. Medicare compensation to home health care agencies was based on the Prospective Payment System (PPS). Under this system, Medicare paid a home health care agency a base payment, which was adjusted based on the severity of the beneficiary's health condition and care needs. The PPS payment provided home health care agencies with payments for each 60-day episode of care for each beneficiary. If the

beneficiary was still eligible for home health care after a home health episode, they may have been recertified for another 60-day home health episode. There was no limit to the number of home health episodes that a beneficiary could receive.

7. To obtain reimbursement from Medicare for home health care services provided to beneficiaries, home health care agencies were required to submit claims either electronically or on a standardized form. Whether an agency submitted claims electronically or on paper, the agency agreed and was required to submit claims that were accurate, complete, and truthful.

## Paradise Home Health Agency

8. Paradise Home Health Agency (Paradise) was an approved home health agency in the Medicare system.

9. Paradise submitted false and fraudulent claims to Medicare for home health care services on behalf of Medicare beneficiaries who were not homebound or otherwise eligible for home health care service.

10. Paradise paid cash to Medicare beneficiaries, many of whom were not homebound or otherwise eligible for home health care services, to recruit and retain them as patients.

## The Defendants

11. **Foluke Adeoeye (Mrs. Adeoye)**, a resident of Arlington, Texas, was a registered nurse who worked at Paradise.

12. **Ayitey Ayayee-Amim (Amim)**, a resident of Irving, Texas, worked at Paradise from approximately the summer of 2010 to the fall of 2011.

13.  **Michael Umunnakwe (Umunnakwe)**, a resident of Grand Prairie, Texas, worked at Paradise from approximately late 2012 to June 2014, first as an office clerk and later as a certified nurse's aide.

14.  **Elizabeth Uwagboi-Ugbeche (Ugbeche)**, a resident of Grand Prairie, Texas, worked at Paradise from approximately the spring of 2010 through October 2014. **Ugbeche**, a registered nurse, served in various roles at Paradise including quality assurance, field nurse, and Director of Nursing.

15.  **OlusolaAderemi Akingbade (Akingbade)**, a resident of Grand Prairie Texas, worked at Paradise from approximately the spring of 2011 through October 2014. **Akingbade**, a registered nurse, served in various roles at Paradise including field nurse and Director of Nursing.

## Coconspirators Not Named as Defendants Herein

16.  Theophilus Adeoye (Mr. Adeoye), a resident of Arlington, Texas, owned and operated Paradise.

17.  Stacey Shephard (Shephard), a resident of Fort Worth, Texas, was an employee of Paradise from approximately April 2010 to 2013. Shephard's job responsibilities included, among other things, driving Mr. Adeoye to patients' homes, taking patients' vital signs, giving cash to patients, and completing paperwork, often with false information.

Count One
Conspiracy to Make False Statements Relating to Health Care Matters
(Violation of 18 U.S.C. § 371 (18 U.S.C. § 1035(a)(2)))

18. Paragraphs 1 through 17 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19. From in or around January 2009, through in or around October 2014, in the Dallas Division of the Northern District of Texas and elsewhere, **Mrs. Adeoye**, **Amim**, **Umunnakwe**, **Ugbeche**, and **Akingbade**, together with their coconspirators Mr. Adeoye and Shephard, who are not named as defendants in this indictment, did knowingly and willfully combine conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, in that the defendants and their coconspirators knowingly and willfully agreed to make, or cause to be made, materially false, fictitious, and fraudulent statements and representations, and to make and use materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements in connection with the payment of health care benefits, items, and services by Medicare, a health care benefit program as defined by 18 U.S.C. § 24(b), that affected commerce, in violation of 18 U.S.C. § 1035(a)(2).

Objects of the Conspiracy

20. It was an object of the conspiracy for Mr. Adeoye and his coconspirators to unlawfully enrich themselves through the submission of false and fraudulent Medicare claims for home health care services that were medically unnecessary and for services that were not provided, and to conceal these facts from Medicare. Between September

12, 2009 and July 31, 2014, Mr. Adeoye caused Paradise to submit claims to Medicare for home health care services in the amount of $4,009,734.19. Paradise was paid $4,027,115.40 for these claims.

## Manner and Means of the Conspiracy

21. The manner and means by which Mr. Adeoye and his coconspirators sought to accomplish the purpose of the conspiracy included, among other things:

22. Mr. Adeoye and his coconspirators worked together to enroll Medicare beneficiaries as patients of Paradise. Mr. Adeoye and his coconspirators knew that many of the beneficiaries enrolled as patients of Paradise were not homebound and not otherwise eligible to receive Medicare-covered home health care. Mr. Adeoye and his coconspirators created paperwork with false information in order to enroll these patients.

23. Mr. Adeoye and his coconspirators paid cash kickbacks to Medicare beneficiaries to recruit and retain them as patients of Paradise. Mr. Adeoye instructed his coconspirators, including **Mrs. Adeoeye**, **Amim**, **Umunnakwe**, and Shephard to make these payments. At times, Mr. Adeoye made the payments himself. In each case, Mr. Adeoye determined how much each patient should be paid and how often. Patients were typically paid $200 upon enrollment with Paradise and $40 twice per month thereafter. Mr. Adeoye and his coconspirators instructed the Medicare beneficiaries not to tell anyone about these cash payments and to avoid talking about the payments over the telephone.

24. Mr. Adeoye and his coconspirators worked together to create documents with false information to support and justify the claims Paradise submitted to Medicare.

Mr. Adeoye and his coconspirators used these documents to support claims submitted on behalf of individuals who were not homebound or otherwise eligible to receive Medicare covered home health care services, as well as to support claims for services that were not provided and for services that were not provided by requisitely licensed and qualified individuals. Mr. Adeoye and his coconspirators referred to this process as "quality assurance."

25.  Mr. Adeoye and his coconspirators frequently falsified patient records to indicate that Mr. Adeoye had provided home health care services to patients, when in fact, Mr. Adeoye had not provided those services because he was sleeping in the car or in Nigeria on vacation, among other reasons.

26.  As part of the false and fraudulent billing process, **Ugbeche** performed quality assurance checks on patient files for patients she knew were not homebound or otherwise eligible to receive Medicare covered home health care services.

27.  As part of the false and fraudulent billing process, **Akingbade** certified and recertified patients as homebound knowing that the patients were not homebound or otherwise eligible to receive Medicare covered home health care services. At times, **Akingbade** would complete such paperwork without actually visiting the patient.

28.  As part of the false and fraudulent billing process, Mr. Adeoye instructed **Amim** and two of Mr. Adeoye's minor children to fabricate nursing notes and to perform quality assurance checks on patient files.

## Overt Acts in Furtherance of the Conspiracy

29. In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed in the Dallas Division of the Northern District of Texas and elsewhere, by at least one coconspirator:

30. On or about May 9, 2011, Mr. Adeoye caused Paradise to submit a claim to Medicare for a 60-day home health care services episode from February 26, 2011 to April 26, 2011 on behalf of B.B., who was not homebound or otherwise eligible for Medicare-covered home health care, in the amount of $931.69.

31. On or about May 4, 2011, Shephard gave $40.00 cash to B.B. at Mr. Adeoye's direction.

32. At one point, B.B. disappeared while on home health care services with Paradise. Mr. Adeoye paid **Amim** a recruitment fee for relocating B.B. in Dallas and getting him back as a patient of Paradise.

33. On or about May 1, 2012, Mr. Adeoye caused Paradise to submit a claim to Medicare for a 60-day home health care services episode from January 1, 2012 to March 6, 2012 on behalf of D.R., who was not homebound or otherwise eligible for Medicare-covered home health care, in the amount of $1,220.00.

34. On or about April 19, 2011, Shephard gave $40.00 cash to D.R. at Mr. Adeoye's direction.

35. On or about May 3, 2011, Shephard gave $40.00 cash to D.R. at Mr. Adeoye's direction.

36. On or about October 18, 2011, Shephard gave $40.00 cash to D.R. at Mr. Adeoye's direction.

37. On or about May 7, 2011, **Ugbeche** signed a CMS-485 Home Health Certification and Plan of Care form containing information she knew to be false for a 60-day home health care services episode for D.R. from May 12, 2011 to July 10, 2011.

38. On or about March 12, 2011, **Ugbeche** signed an Outcome and Assessment Information Set (OASIS) form for D.R. that contained information she knew to be false.

39. On or about May 7, 2011, **Ugbeche** signed an OASIS form for D.R. that contained information she knew to be false.

40. On or about October 9, 2012, Mr. Adeoye caused Paradise to submit a claim to Medicare for a 60-day home health care services episode from July 28, 2012 to September 25, 2012 on behalf of A.L.S., who was not homebound or otherwise eligible for Medicare-covered home health care, in the amount of $2,570.00.

41. On or about April 19, 2011, Shephard gave $40.00 cash to A.L.S. at Mr. Adeoye's direction.

42. On or about May 3, 2011, Shephard gave $40.00 cash to A.L.S. at Mr. Adeoye's direction.

43. On or about June 25, 2014, Mr. Adeoye caused Paradise to submit a claim to Medicare for a 60-day home health care services episode from April 17, 2014 to June 15, 2014 on behalf of L.T., who was not homebound or otherwise eligible for Medicare-covered home health care, in the amount of $1,814.48.

44. On or about April 19, 2011, Shephard gave $40.00 cash to L.T. at Mr. Adeoye's direction.

45. On or about May 3, 2013, Mr. Adeoye caused Paradise to submit a claim to Medicare for a 60-day home health care services episode from February 1, 2013 to April 1, 2013 on behalf of P.K. in the amount of $1,520.00. During this 60-day episode, on or about March 21, 2013, **Umunnakwe** spoke to P.K. by telephone. P.K. called Paradise to complain about not receiving one of her cash payments from Paradise. **Umunnakwe** instructed P.K. not to talk about those payments over the telephone.

46. On or about December 10, 2013, **Mrs. Adeoye** gave $40.00 cash to E.E. at Mr. Adeoye's direction. E.E. was not homebound or otherwise eligible for Medicare covered home health care.

47. On or about March 12, 2014, Mr. Adeoye caused Paradise to submit a claim to Medicare for a 60-day home health care services episode from December 19, 2013 to February 16, 2014 on behalf of E.E. in the amount of $2,014.57.

48. On or about February 15, 2013, **Akingbade** signed a CMS-485 Home Health Certification and Plan of Care form containing information he knew to be false for a 60-day home health care services episode for M.W. from February 15, 2013 to April 15, 2013.

49. On or about February 15, 2013, **Akingbade** signed an OASIS form for M.W. that contained information he knew to be false.

All in violation of 18 U.S.C. § 371 (18 U.S.C. §1035(a)(2)).

## Forfeiture Notice
## (18 U.S.C. § 982(a)(7))

50. Upon conviction of any offense alleged in this Indictment, and pursuant to 18 U.S.C. § 982(a)(7), **Mrs. Adeoye**, **Amim**, **Umunnakwe**, **Ugbeche**, and **Akingbade** shall forfeit to the United States any property, real or personal, constituting or derived from, directly or indirectly, the gross proceeds traceable to the commission of the offense.

51. The above-referenced property subject to forfeiture includes, but is not limited to, a "money judgment" in the amount of U.S. currency constituting the gross proceeds traceable to the offense.

## Substitute Assets

52. Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above-described property subject to forfeiture, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described property subject to forfeiture.

A TRUE BILL.

_____
FOREPERSON

JOHN R. PARKER
ACTING UNITED STATES ATTORNEY

_____
DOUGLAS B. BRASHER
Special Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8604
Facsimile: 214-659-8802
douglas.brasher@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

VS.

FOLUKE ADEOYE (01)
AYITEY AYAYEE-AMIM (02)
MICHAEL UMUNNAKWE (03)
ELIZABETH UWAGBOI-UGBECHE (04)
OLUSOLA ADEREMI AKINGBADE (05)

INDICTMENT

18 U.S.C. § 371 (18 U.S.C. § 1035(a)(2))
Conspiracy to Make False Statements Relating to Health Care Matters
(1 COUNT)

18 U.S.C. § 982(a)(7)
Forfeiture

A true bill rendered:

DALLAS                                                                                           FOREPERSON

Filed in open court this 6th day of May, A.D. 2015.

Warrants to issue

UNITED STATES MAGISTRATE JUDGE
(Adeoye: 4:15-MJ-048; Ayayee-Amim: 4;15-MJ-034; Umunnakwe: 4:15-MJ-047)